**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
                                    )
ROBERT L. MORE, et al.,             )
                                    )
                Plaintiffs,         )
                                    )  Civil Action No. 99-3373 (EGS)
                v.                  )
                                    )
JOHN W. SNOW, Secretary,            )
Department of Treasury,             )
                                    )
                Defendant.          )
                                    )
                                    )
JOSEPH GUION, et al.,               )
                                    )
                Plaintiffs,         )
                                    )  Civil Action No. 02-321 (EGS)
                v.                  )
                                    )
JOHN W. SNOW, Secretary,            )
Department of Treasury,             )
                                    )
                Defendant.          )
                                    )
```

<u>**MEMORANDUM OPINION**</u>

Plaintiffs, seven current and former members of the police force at the Bureau of Engraving and Printing ("BEP"), bring individual actions under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 631 et seq., and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 et seq., against the Secretary of the Department of Treasury.[1]

---

[1]  John W. Snow has been automatically substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d)(1).

Plaintiffs' third amended complaints include claims of age discrimination in connection with promotions, unlawful retaliation for matters connected to this litigation, retaliatory hostile work environment, and disparate treatment based on their race and gender.  Pending before the Court is defendant's motion for summary judgment, arguing that all claims should be dismissed because plaintiffs failed to exhaust their administrative remedies or because the claims fail on their merits.  Also pending is plaintiffs' motion for sanctions based on defendant's alleged spoliation of evidence.  Upon consideration of the motions, the responses and replies thereto, the applicable law, and the entire record, the Court determines that all of plaintiffs' claims are unexhausted, except for a subset of the age discrimination claims, and that plaintiffs have not shown that defendant acted recklessly or negligently in destroying or failing to preserve the missing evidence.  Therefore, for the reasons stated herein, defendant's motion for summary judgment is **GRANTED in part and DENIED in part**, and plaintiff's motion for sanctions is **DENIED**.

## BACKGROUND

## I. Factual Background of BEP Promotions

Plaintiffs allege that the BEP committed illegal age discrimination with respect to promotions between 1997 and 2003. Prior to November 2002, police officers at BEP competed for

promotion to the Lead Police Officer (Corporal) position.[2]  After
BEP advertised the availability of a position with an individual
vacancy announcement, interested applicants submitted a resume or
a Form OF-612, Optional Application for Federal Employment, along
with copies of his or her most recent SF-50, Notification of
Personnel Action, a copy of a current or most recent annual
performance appraisal, and other administrative forms.
Applicants were encouraged to submit a supplementary statement
which demonstrated how their background and experience related to
the evaluation criteria, also referred to as the Knowledge,
Skills, and Abilities listed under the Method of Evaluation
section in the vacancy announcement.  These supplemental
statements are thus known as "KSAs."

Once the period identified in the vacancy announcement for
submitting applications closed, a personnel specialist would
review the applications to determine minimum qualifications using
Office of Personnel Management qualification standards.  Upon
completion of this review, a panel of three higher ranked
officers at the same grade level or higher than the announced
position would convene to further evaluate the candidates'
applications against a crediting plan to determine who is "best
qualified" for promotion.  The "best qualified" list was

---

[2]  Unless otherwise noted, these facts are drawn from
defendant's statement of material facts ("DSF") and were not
disputed by plaintiffs.  *See* LCvR 56.1.

determined by rating each qualified applicant and the documents submitted with her application against a crediting plan.  Whether or not an applicant was placed on the "best qualified" list for a promotion was determined in part by the quality of the KSAs that the applicant submitted.  Normally, three to five candidates would be identified as "best qualified" and referred in alphabetical order to the selecting official.

The selecting official, in this case the Commander or her designee, reviewed the "best qualified" list of candidates and maintained discretion to select from that list the candidate to be promoted.  The selecting official would then notify the servicing human resources specialist of her selection(s) and an offer of promotion would be extended to the selectee(s).  Candidates who were either not selected or not qualified were notified by letter of the final status of their application.  David Lindsey, now the Chief of Security, was the Commander between July 2, 1995 and 1998.  Vivian Ashton was the Commander between 2000 and 2002.

After November 2002, BEP ceased using a competitive process to promote officers to the Corporal position.  Police officers who meet all qualification and training requirements and maintain satisfactory performance reviews are automatically recommended for promotion to the Corporal position when they have served enough time in grade.  Currently, BEP recruits for Sergeant

4

positions using the same competitive process which formerly filled Corporal vacancies.

Plaintiff Arthur Haynesworth was born in December 1950, and hired by the BEP in March 1995. Haynesworth applied for promotion at least seven times between 1997 and 2001, but was not selected. Haynesworth was promoted to Corporal in 2002 by means of the non-competitive process, and has since received two step increases, resulting in greater pay.

Plaintiff Robert L. More was born in July 1947, and hired by the BEP in June 1995. More applied for promotion at least seven times between 1997 and 2001, but was not selected. More retired from the BEP in June 2002.

Plaintiff Nathaniel S. Taylor was born in August 1948, and hired by the BEP in March 1993. Taylor was promoted in 1997 to the position of Corporal. Taylor applied for another promotion at least six times between 1998 and 2003, but was not selected.

Plaintiff Joseph Guion was born in February 1955, and hired by the BEP in January 1997. Guion applied for promotion on four occasions between 1999 and 2001, but was not selected. Commander Ashton promoted Guion to Corporal in 2002 by means of the competitive process.

Plaintiff William Watson was born in August 1957, and hired by the BEP in July 1995. Watson applied for promotion twice between 1999 and 2001, but was not selected. Watson was promoted

to Corporal in 2002 by means of the non-competitive process.
Watson was promoted again to Sergeant in 2004 by means of the
competitive process.

Plaintiff Charles Hughes was born in October 1942, and hired
by the BEP in June 1995.  Hughes applied for promotion on five
occasions between 1998 and 2001, but was not selected.  Hughes
was promoted to Corporal in 2003 by means of the non-competitive
process.  Hughes retired from the BEP in August 2004.

Plaintiff Edward Williams was born in September 1957, and
hired by the BEP in May 1997.  Williams applied for promotion on
two occasions between 2000 and 2001, but was not selected.
Commander Ashton promoted Williams to Corporal in October 2001 by
means of the competitive process.

For the following vacancy announcements, one or more
plaintiffs applied for the position, none were selected, and all
officers promoted were under the age of 40 at the time:
1998-130-YDC (3 promotions selected November 24, 1998),
1999-086-YDC (2 promotions selected June 17, 1999), 1999-190-YDC
(4 promotions selected February 2, 2000), 2000-030-GCM (1
promotion selected March 8, 2000), 2000-125-GCM (1 promotion
selected October 6, 2000), 2001-002-GCM (3 promotions selected
March 7, 2001).  Decl. of Joan Cameron, Def.'s Ex. 1, at 3-5.
For vacancy announcement 2001-137-GCM, Gerald Fields, age 38, and
plaintiff Williams, age 44, were selected for promotion by

Commander Ashton on September 26, 2001.  Plaintiffs More,
Haynesworth, Guion, and Hughes also applied, but were not
selected.  *Id.* at 5.   For vacancy announcement 2002-007-AJC,
Reginald Parker, age 40, and plaintiff Guion, age 47, were
selected for promotion by Commander Ashton on March 20, 2002.
Plaintiff Haynesworth also applied, but was not selected.  *Id.*

      According to former Commander (now Chief) Lindsay, he
personally made selections for promotion by reviewing the
applications of candidates on the best qualified list for a
particular vacancy announcement.  DSF ¶ 47.  Lindsey considered
the candidates annual appraisals, work history, time in grade at
the particular level, and disciplinary record.  *Id.*  Lindsey then
selected for each position whom he considered to be the most
highly qualified candidate.  *Id.*  In making his selections,
Lindsey claims that he never considered the age, sex, race, or
ethnicity of any candidate.  DSF ¶ 48.

      According to former Commander Ashton, when she made
selections for promotion, she received a certificate of the
highly qualified individuals from Human Resources based on the
KSA rankings.  DSF ¶ 49.  Ashton reviewed the KSAs submitted, the
discipline files, work records, as well as her own personal
knowledge and observations of the candidates.  *Id.*  She also
spoke with managers to obtain further input.  *Id.*  Ashton
considered specifically what candidates did at BEP, what kind of

7

job they did, and whether they performed any additional duties.
Although she considered previous experience, she placed slightly
more emphasis on what people had done at BEP.  Ashton was aware
of a "zero tolerance" policy against all types of unlawful
discrimination.

Plaintiffs have proffered several pieces of evidence in
support of their argument that, contrary to the statements of
Commanders Lindsay and Ashton, the BEP utilized illegitimate
criteria in making its promotion decisions.  First, plaintiffs
simply assert that they were "markedly more qualified" than the
officers who were promoted.  Pls.' Opp. to Def.'s Mot. for Summ.
J. at 19 (citing Pls.' Ex. 5).  Plaintiffs also assert that they
had more experience than the officers who were promoted.  *Id.*
(citing Guion Resp. to Interrog., Def.'s Ex. 7).

Second, plaintiffs allege that for promotions under vacancy
announcement 1998-130-YDC, younger officers had disciplinary
records but were nonetheless promoted.  Plaintiffs' Statement of
Material Facts ("PSF") ¶¶ 47, 94.  Specifically, plaintiff
Haynesworth alleges that Norman Simms, born in August 1964, had a
letter of reprimand and a charge of AWOL in his file at the time
of his promotion.  *Id.* (citing Haynesworth Resp. to Interrog. No.
5 at 6).  He also alleges that Roderick Elam, born in July 1963,
had physically abused his child in front of a Montgomery county
police officer and that the BEP was aware of the charges,

8

presumably at the time of his promotion.  *Id.*  Plaintiffs do not point to any documentary evidence for these assertions. Commander Lindsay, however, proffered an explanation for these promotions, stating that he promoted Simms, Elam, and Irvin Hamilton in November 1998 because these three individuals held the longest work experience at BEP, along with substantial time in grade.  DSF ¶ 95.

Plaintiffs question this explanation by pointing to the hiring for vacancy announcement 2001-002-GCM.  The three officers promoted, all under the age of 40, did not have as much experience at the BEP or time in grade as plaintiffs Hughes and Williams, who were not selected.  *See* Pls.' Opp. at 20; DSF ¶¶ 96-99.  Commander Ashton, however, stated that she selected the officers promoted because they all volunteered for overtime on a regular basis and volunteered for assignments including in the administrative office.

Third, plaintiffs point to purported statistical evidence of age discrimination.  *See* PSF ¶¶ 48, 49, 91, 95, 100.  A report written by the Center for Forensic Economic Studies analyzed 16 promotions for corporal that occurred between 1997 and 2001. Pls.' Ex. 30 at 1-2.  Of the 16 promotions, 15 went to applicants under the age of 40.  *Id.* at 2.  Of the applicants who met the minimal qualifications, there were cumulatively 73 applicants under age 40 and 38 applicants age 40 or older who applied for

the 16 positions.  *Id.* at 1-2.  The report did not consider as part of its data plaintiff Taylor's promotion to corporal in 1997 when he was 49 years old, plaintiff Guion's promotion to corporal in 2002, and plaintiff Watson's promotion to sergeant in 2004, all of which occurred through the competitive process.

Assuming that all the applicants were exactly equally qualified, *see id.* at 1, the report concluded that it was statistically less likely for officers over 40 to be promoted to corporal.  *Id.* at 5.  The report contains no evidence to support its assumption that all applicants were exactly equally qualified.  *See id.* at 1-5.  The report also notes that at the second stage of the selection process, the highest ranked applicant on the "best qualified" list was not always selected; in some instances an applicant would be selected over another applicant who had a score one or two points higher.  *Id.* at 4-5.

At defendant's request, ADR Litigation Support issued a report analyzing plaintiffs' statistical analysis.  *See* Pls.' Ex. 31 at 1.  The report noted two significant shortcomings in plaintiffs' report.  One was that plaintiffs' report relied on data for only a subset of the vacancies that were filled during the period of time for which data is available (1998-2004).  *Id.* at 7-8.  The other was that the report's finding of a correlation between age and likelihood of promotion is of little value because the analysis did not take into account other relevant

factors such as strength of application.  *Id.* at 10.

Fourth, plaintiffs attack the first step of the promotion process – evaluating the KSAs to create the "best qualified" list.  Plaintiffs assert that managers wrote the documents submitted for younger candidates for promotion under vacancy announcement 99-0190-YDC, those same managers rated the documents highly, and these candidates were promoted.  PSF ¶ 40 (citing Haynesworth Depo. at 40-41).  Defendants point out, however, that plaintiff More was offered management help with his KSAs, but refused the offer.  DSF ¶ 87.  In addition, plaintiff Taylor admitted that he never sought assistance in writing his KSAs. DSF ¶ 88.  On the other hand, plaintiff Haynesworth states that he was never offered any help with his KSAs.  PSF ¶ 87.

## II. Procedural History

### A. Exhaustion of Administrative Remedies

There are significant disputes over whether plaintiffs exhausted their administrative remedies prior to filing suit in this Court.  Plaintiffs Haynesworth and More claim that they initiated the administrative process with regard to their claims of age discrimination in 1998.  Plaintiffs other than Haynesworth and More, however, only assert that they pursued official administrative remedies beginning in 2001.

Defendant has reviewed the database and files of the BEP's Office of Equal Employment Opportunity and Employee Counseling

Services ("EEO Office") to determine the history of all the EEO activity of each of the plaintiffs. Decl. of Patricia Mabry, Def.'s Ex. 2, ¶ 3. According to these records, plaintiff Haynesworth did not contact the EEO Office about possible claims of age discrimination until 2001. *Id.* ¶¶ 4-7. Haynesworth contends, however, that he filed a complaint concerning age discrimination with the EEO Office in December 1998. PSF ¶ 54. Haynesworth presents as evidence a memorandum written by himself and addressed to Arthur Hicks, a counselor at the EEO Office, which is dated December 23, 1998. Pls.' Ex. 35. The memorandum alleged that there was age discrimination in the promotion process. *Id.* at 1-2. This memorandum, though, is not styled as a formal EEO complaint. Moreover, Haynesworth has not provided any other documentation demonstrating further steps in the EEO process. Nor did Haynesworth ever mention the 1998 EEO Complaint in his deposition. *See* Haynesworth Depo., Def.'s Ex. 35, at 129-32 (discussing all other complaints).

Similarly, according to the BEP's records, plaintiff More did not contact the EEO office about possible claims of age discrimination until 2001. Mabry Decl. ¶ 8. More claims, however, that he filed a formal complaint concerning age discrimination with the EEO Office in November 1998. PSF ¶ 58. More presents as evidence a letter addressed to the EEO Office, which is undated, but alleges discrimination based on age and

veteran status, particularly with reference to vacancy announcement 1998-130-YDC.  Pls.' Ex. A.  This letter, though, is not styled as a formal EEO complaint.  More also has as evidence an EEO form he signed on February 21, 1999, that designates Charles Schoeneman as his legal representative for the EEO process.  Pls.' Ex. D.  Attached to this exhibit is another undated letter from More to the EEO Office, adding further details about the challenged 1998 promotion.  *Id.*  More also relies on an undated letter from Commander Lindsay to EEO Counselor Hicks, regarding More's allegation of age discrimination, wherein Lindsay informs Hicks that he made his selections for vacancy announcement 1998-130-YDC based on the applicants' BEP work history and time in grade, without regard to their age, race, sex, or ethnicity.  Pls.' Ex. E.

Finally, More states in his declaration that he filed a complaint with the EEO Office in November 1998.  Decl. of Robert More, Pls.' Ex. 1, ¶ 1.  He first states that he engaged in counseling with the EEO Office, *id.*, but subsequently states that he never received any response from the Office through February 1999, *id.* ¶ 3.  At that point he hired an attorney and claims to have informed the EEO Office of his intent to file a lawsuit. *Id.* ¶ 3.

On March 15, 2001, plaintiff Guion made initial contact with the EEO Office concerning claims of age discrimination.  Mabry

13

Decl. ¶ 12.  Counseling was apparently unavailing, and Guion was given a Notice of Right to Sue on July 11, 2001.  *Id.* at Ex. DD, at 2.  On July 18, 2001, Guion filed a formal complaint with the EEO Office.  Pls.' Ex. 45.  In addition, Guion filed a formal class complaint of discrimination with the EEO Office on the same day.  Pls.' Ex. 47.  On June 11, 2002, an Administrative Law Judge ("ALJ") from the Equal Employment Opportunity Commission ("EEOC") decided that class treatment was not warranted for Guion's class complaint, and recommended that the BEP reject the complaint for processing as a class.  Mabry Decl. ¶ 12, Ex. EE. On July 15, 2002, the BEP implemented the ALJ's decision by denying class treatment of Guion's complaint, and subsequently dismissed the individual complaint due to the pendency of litigation concerning the same subject.  *Id.*; *see* 29 C.F.R. § 1614.107(a)(3).

Plaintiffs More, Hughes, Haynesworth, Watson, and Williams also contacted the EEO Office in March 2001 concerning claims of age discrimination.  Mabry Decl. ¶¶ 7-16.  All of these plaintiffs sought to join Guion's class complaint.  *Id.*  The BEP's search for records showed that More and Hughes filed formal, individual complaints of age discrimination in July 2001. *Id.* ¶¶ 8, 10.  Notices from the BEP to Guion, informing him that other plaintiffs sought to join his class complaint, indicate that Williams and Watson also filed formal, individual complaints

in July 2001.  *See* Pls.' Exs. 41 & 42.  Haynesworth also claims

that he submitted a formal, individual complaint by mail, but the

only evidence offered is a post office receipt for a package sent

to the Treasury Department.  *See* PSF ¶ 55; Pls.' Ex. 36.  It is

undisputed that plaintiff Taylor never contacted the EEO Office

regarding a claim of age discrimination.  *See* DSF ¶ 60; PSF ¶ 60.

After the BEP denied Guion class treatment for his complaint

in July 2002, the EEO Office mailed notices of the denial to

More, Hughes, Haynesworth, Watson, and Williams.  Mabry Decl. Ex.

W.[3]  The letter stated that the individual complaints filed by

Guion, Hughes, Watson, and Williams would be dismissed because

those plaintiffs had filed age discrimination claims in this

Court.  *Id.*  The letter also stated that More and Haynesworth

could seek additional EEO counseling on their individual

complaints and had to do so within 15 days to properly exhaust

their administrative remedies.  *Id.*  Apparently, the EEO Office

was unaware that More and Haynesworth had also already filed all

of their age discrimination claims in this Court, and for this

reason did not dismiss their complaints along with the others.

## B. Filings in Federal Court

On December 17, 1999, plaintiffs More, Haynesworth, and

---

[3]  The fact that Haynesworth was included in this letter is
perhaps evidence that he did in fact submit a formal, individual
complaint in July 2001.

Taylor (the "More plaintiffs") filed suit in this Court, alleging that the BEP discriminated against each of them on the basis of age with respect to three promotion decisions, the most recent decision occurring in June 1999.  *More v. O'Neill*, No. 99-3373-EGS, Compl. at 1-6.  On June 14, 2000, the More plaintiffs filed an amended complaint, alleging that More had been illegally denied promotions to corporal on four occasions, that Haynesworth had been illegally denied promotions to corporal on four occasions, and that Taylor had been illegally denied promotion to sergeant on four occasions.  Am. Compl. at 3-5.  All of these claims alleged age discrimination.  *Id.* at 5-9.  On January 29, 2002, the More plaintiffs filed a second amended complaint, which added similar age discrimination claims for promotions based on vacancy announcements up through 2001.  2d Am. Compl. at 3-18.  Discovery did not commence in the case until May 2002.

On February 21, 2002, plaintiffs Guion, Watson, Williams, and Hughes (the "Guion plaintiffs") filed a separate suit in this Court, alleging that the BEP discriminated against each of them on the basis of age with respect to promotion decisions that occurred between 1998 and 2001.  *Guion v. O'Neill*, No. 02-321-EGS, Compl. at 2-13.  In April 2002, the Court consolidated the *Guion* suit with the *More* suit.  *See* Order, Apr. 26, 2002.  On May 28, 2004, the More plaintiffs filed a third amended complaint,

16

which added similar age discrimination claims for promotions that
occurred between 2002 and 2003, and also added claims of
retaliation, hostile work environment, and race and gender
discrimination.  *More v. O'Neill*, No. 99-3373-EGS, 3d Am. Compl.
at 3-21.  Similarly, on May 26, 2004, the Guion plaintiffs filed
a third amended complaint, which added similar age discrimination
claims for promotions that occurred in 2002, and also added
claims of retaliation, hostile work environment, and race and
gender discrimination.  *Guion v. O'Neill*, No. 02-321-EGS, 3rd Am.
Compl. at 3-17.

### C. Events During Litigation

During the pendency of the litigation, on January 9, 2003,
the plaintiffs attended a mediation session with Magistrate Judge
Facciola.  It appears that plaintiffs Haynesworth, Taylor, Guion,
Hughes, and Watson received Absent Without Leave ("AWOL") charges
for missing work on the day of the mediation.  According to Chief
Lindsay, after he became aware that some plaintiffs had received
AWOL charges for failing to report to work on the same day as the
mediation, he directed that all AWOL charges be dropped.  DSF ¶
111.  He further instructed supervisors to give plaintiffs court
leave, not dock the plaintiffs any pay or leave time, and to
restore any docked pay or leave time back to plaintiffs.  *Id.*
Plaintiffs Taylor, Hughes, and Watson admit that the AWOL charges
were dropped, and plaintiffs Haynesworth and Guion did not know

whether the AWOL charges stayed on their record.  DSF ¶¶ 112-16.

After plaintiff Hughes' AWOL charge was dropped, Captain Miller issued a reprimand to Hughes for disobeying the direct order of a supervisor.  The reprimand stayed in Hughes' folder for a year, and was removed in early 2004.  According to Chief Lindsay, the reprimand did not result in a loss of pay, leave, or benefits.  Decl. of David Lindsay, Def.'s Ex. 3, ¶ 12.  Hughes filed a formal EEO complaint relating to the reprimand on February 7, 2003.  Mabry Decl. ¶ 11.  On November 20, 2003, a Final Agency Decision was issued, finding that the evidence did not support a finding of discrimination based on age or retaliation.  *Id.*

No other plaintiff filed a formal EEO complaint regarding retaliation arising out of the mediation incident.  *See* Mabry Decl.  In addition, none of the plaintiffs ever sought EEO counseling or filed any type of complaint with the EEO Office regarding a hostile work environment based on either their age or their protected activity.

## III. Missing Evidence

During the course of discovery, defendant was unable to produce certain documents for plaintiffs.  The first set of evidentiary materials at issue are the "1997 and 1998 KSA records" for plaintiffs More, Haynesworth, and Taylor.  *See* Pls.' Mot. for Sanctions at 3.  In the answer to the More plaintiffs'

18

third amended complaint, defendant stated that "Defendant does not retain merit promotion files for more than two years and is thus unable to respond to allegations prior to 1998."  Answer to 3d Am. Compl. at 3.  Therefore, defendant was unable to respond to the plaintiffs' claims concerning promotions under vacancy announcements 1997-442-YDC and 1998-113-YDC.  *Id.* at 4, 6, 9.

Also at issue are Commander Ashton's personal notes regarding her selections for promotions.  According to her, she made brief, handwritten notes about applicants when discussing managers' recommendations in order to refresh her recollection when she made the final selection decision.  Decl. of Vivian Ashton, Def.'s Opp. to Pls.' Mot., Ex. 1, ¶ 4.  The notes were only intended for her own use, they were not intended to memorialize the basis of her decisions, and she was not aware of any obligation to preserve the notes as part of the BEP's merit promotion files.  *Id.*  Upon her departure from the BEP in 2002, she neither destroyed the notes nor removed them from her office, but cannot recall what happened to them.  *Id.* ¶ 5.  She has since returned to the BEP to diligently search for the notes, but could not locate them.  *Id.* ¶ 6.

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

19

any affidavits or declarations show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  In considering a summary judgement motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255; *see Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 849-50 (D.C. Cir. 2006); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).

The non-moving party's opposition, however, must consist of more than unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The evidence must allow a jury reasonably to find for the plaintiff, and if the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.  To defeat summary judgment, a plaintiff must produce more than "a scintilla of evidence to support his claims." *Freedman v. MCI Telecomm. Corp.*, 255 F.3d 840, 845 (D.C. Cir.

2001).  In an employment discrimination case, "[u]sually, proffering evidence from which a jury could find that the employer's stated reasons were pretextual will be enough to get a plaintiff's claim to a jury." *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2006) (internal quotation marks omitted).

## ANALYSIS

Plaintiffs' third amended complaints allege claims of age discrimination in connection with the denied promotions, unlawful retaliation for matters connected to the mediation session with Magistrate Judge Facciola, retaliatory hostile work environment, and disparate treatment based on race and gender.  In their brief, plaintiffs concede that they are no longer asserting race and gender discrimination claims.  Pls.' Opp. to Def.'s Mot. for Summ. J. at 32 & n.12.  In support of its motion for summary judgment, defendant argues initially that all of plaintiffs' claims should be dismissed for failure to exhaust administrative remedies.  On the merits, defendant argues that plaintiffs cannot make out a prima facie case for any of their claims.

## I. Exhaustion of Administrative Remedies

### A. Legal Requirements of Exhaustion

The ADEA broadly bars age discrimination in employment and provides a federal government employee two alternative avenues to judicial redress.  *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir.

2003). "First, the employee may bring a claim directly to federal court so long as, within 180 days of the allegedly discriminatory act, he provides the EEOC with notice of his intent to sue at least 30 days before commencing suit." *Id.* (citing 29 U.S.C. §§ 633a(c), (d)). "Second, the employee may invoke the EEOC's administrative process, and then sue if dissatisfied with the results." *Id.* (citing 29 U.S.C. §§ 633a(b), (c) and *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5-6 (1991)). Failure to adhere to either of the alternatives will bar claims in this Court. *See id.* at 199. "It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies." *Johnson v. Ashcroft*, 445 F. Supp. 2d 45, 51 (D.D.C. 2006).

Plaintiffs in this case have not pursued the first route for exhaustion of any of their claims. There is no evidence that any plaintiff ever sent the EEOC a notice of his intent to sue. Plaintiffs argue that they nonetheless satisfied the requirement because notice given to the employing agency is sufficient. The D.C. Circuit, however, has clearly held that "a plaintiff who wants to proceed under § 633a(d) must transmit his intent-to-sue notice to the EEOC itself." *Rann*, 346 F.3d at 198. Therefore, in order to bring their claims in this Court, plaintiffs must have exhausted their remedies through the EEOC's administrative process. *See id.* at 195.

The procedures governing discrimination complaints brought by employees of the federal government under the ADEA are set forth in 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity).  *Robinson v. Chao*, 403 F. Supp. 2d 24, 28 (D.D.C. 2005); *see* 29 C.F.R. § 1614.103.  An employee may not file a formal discrimination complaint without first consulting an EEO counselor and working toward informal resolution of the matter. *Robinson*, 403 F. Supp. 2d at 28; *see* 29 C.F.R. § 1614.105(a). The counselor must be contacted no later than "45 days from the alleged discriminatory act or, in the case of a personnel action, within 45 days of its effective date."  29 C.F.R. § 1614.105(a)(1).

If the matter is not resolved informally, the counselor shall inform the employee in writing of the right to sue, and the employee must, within 15 days, file a formal complaint of age discrimination against the agency.  29 C.F.R. §§ 1614.105(d), 1614.106(a)-(c).  The agency is then obligated to investigate the matter within 180 days.  *Robinson*, 403 F. Supp. 2d at 28; *see* 29 C.F.R. §§ 1614.105(d), (e)(2).  After the agency's investigation has concluded, the employee may either request a hearing and decision from an EEOC administrative judge, or seek to obtain an immediate final decision from the agency.  *Robinson*, 403 F. Supp. 2d at 28; *see* 29 C.F.R. § 1614.108(f).  Any decision on the matter may be appealed to the EEOC, or challenged through the

filing of a civil action in federal district court within 90 days. *Robinson*, 403 F. Supp. 2d at 28; *see also* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.  An employee also may file a civil action at any time after a complaint has been pending before the agency or the EEOC for at least 180 days.  42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(b).

The procedure involving class complaints is similar.  An employee who wishes to file a class complaint must first seek counseling and be counseled in accordance with section 1614.105. 29 C.F.R. § 1614.204(b).  A complainant may move for class certification at any reasonable point in the process.  *Id.*  If a complainant moves for class certification after completing the counseling process contained in section 1614.105, no additional counseling is required.  *Id.*  The class complaint is supposed to be processed promptly, but no deadline for a decision is imposed. *See id.* § 1614.204(c)(3).  "The administrative judge may dismiss the complaint . . . because it does not meet the prerequisites of a class complaint under § 1614.204(a)(2)."  *Id.* § 1614.204(d)(2). "A dismissal of a class complaint shall inform the [complainant] either that the complaint is being filed on that date as an individual complaint . . . or that the complaint is also dismissed as an individual complaint in accordance with § 1614.107."  *Id.* § 1614.204(d)(7).

Prior to 2002, courts could interpret administrative

complaints alleging a pattern of ongoing discrimination to exhaust precedent and subsequent similar acts of discrimination under the "continuing violation" doctrine. *See Prince v. Rice*, 453 F. Supp. 2d 14, 24 (D.D.C. 2006); *Adams v. Mineta*, 2006 WL 367895, at *3 (D.D.C. 2006). In 2002, however, the Supreme Court held that the Title VII statute of limitations "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). The Court was clear in holding that "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts [as opposed to hostile work environment claims] must file his charge within the appropriate time period." *Id.* at 122. Therefore, "*Morgan* requires a plaintiff to exhaust all administrative remedies for each 'discrete' incident of discrimination or retaliation that rises to the level of an unlawful employment practice." *Prince*, 453 F. Supp. 2d at 24 (citing *Morgan*, 536 U.S. at 110-13); *Adams*, 2006 WL 367895, at *3. *Morgan* also thus prohibits plaintiffs from filing subsequent similar claims in federal court without first exhausting administrative remedies. *Bowie v. Ashcroft*, 283 F. Supp. 2d 25, 34 (D.D.C. 2003). *Morgan* similarly applies to claims under the ADEA. *See Murphy v. PriceWaterhouseCoopers, LLP*, 357 F. Supp. 2d 230, 239 (D.D.C. 2004); *Sharpe v. Cureton*, 319 F.3d 259, 267 n.6 (6th Cir. 2003) ("*Morgan*'s construction of

the continuing violation doctrine [is] equally applicable to claims of age discrimination and retaliation brought under the [ADEA]").[4]

## B. Application to Plaintiffs' Claims

Because none of the plaintiffs notified the EEOC itself of their intent to sue, each of plaintiffs' discrete claims must have been administratively exhausted in order to be viable. Under the regulations governing federal employee ADEA claims, this means that plaintiffs must have initiated the administrative complaint process with the EEO Office within 45 days of each discrete, alleged act of discrimination.  *See Adams*, 2006 WL 367895, at *2 ("a plaintiff's failure to bring a complaint to an EEO counselor within 45 days of the alleged incident will result in the plaintiff losing the right to bring that claim before a federal court").  Holding plaintiffs' to that standard, the Court can entertain only a small subset of plaintiffs' claims.

Defendant argues, based on the search of the EEO Office records, that no plaintiff exhausted age discrimination claims with the EEO Office prior to 2001.  Plaintiffs' evidence brings

---

[4]  Plaintiffs argue at several points that *Morgan* is inapplicable because the Supreme Court did not decide whether its ruling applied to pattern and practice cases under Title VII. This argument is unavailing, however, because plaintiffs' claims are based on an individual, disparate treatment basis of liability, not a class-action pattern and practice basis of liability.  *See Turner v. District of Columbia*, 383 F. Supp. 2d 157, 168-69 (D.D.C. 2005).

this assertion into material dispute, at least with regard to one claim.  Specifically, plaintiff More claims to have contacted the EEO Office in November 1998.  His letter to the EEO Office, though undated, specifically complains about the promotions under vacancy announcement 1998-130-YDC, which occurred on November 24, 1998.  Therefore, this letter could easily have been filed within 45 days of the 1998-130-YDC promotions.  While defendant claims to have no record of this complaint, the letter from then-Commander Lindsay to counselor Hicks, discussing More's allegation concerning these promotions, demonstrates that the EEO Office engaged in at least informal counseling for More's complaint.  As informal counseling apparently failed, the EEO Office was obligated to inform More of his right to sue and file a formal complaint, but there is no record of it having done so.

Moreover, More's letter to counselor Hicks can be deemed to be a formal complaint if it satisfies the regulatory requirements.  *See Brodetski v. Duffey*, 199 F.R.D. 14, 18 (D.D.C. 2001).  The regulations require that a formal complaint contain a signed and "sufficiently precise" statement which identifies the "aggrieved individual," "the agency" involved, "generally the action(s) or practice(s) that form the basis of the complaint," and also includes a telephone number and address to contact the individual.  *See* 29 C.F.R. § 1614.106(c).  More's letter does contain sufficiently precise information regarding the aggrieved

27

individual, agency involved, and allegedly discriminatory act, though is not signed and does not include his telephone number or address.  Even though technically deficient, More's letter satisfies section 1614.106(c)'s substantive requirements, and thus may be deemed a formal complaint.  *See Brodetski*, 199 F.R.D. at 18.

Therefore, if More filed a formal complaint after engaging in informal counseling, and the BEP has no record of ever issuing a final agency decision, then More was allowed to file his lawsuit in December 1999 because there had been more than 180 days without agency action on his complaint.  *See* 29 C.F.R. § 1614.407(b).  As there are at least material disputes regarding these facts, defendant cannot meet its burden at summary judgment of showing that More failed to exhaust remedies with regard to his challenge to the 1998-130-YDC promotions.

Plaintiff Haynesworth similarly presents an unsigned letter to counselor Hicks, which is dated December 23, 1998, complains about the "most recent" promotion to corporal, and specifically alleges age discrimination.  This letter could have initiated EEO counseling within 45 days of the 1998-130-YDC promotions.  In contrast to More's situation, however, there is no evidence of EEO informal counseling or investigation regarding Haynesworth's complaint.  In fact, there is no evidence that the EEO Office ever received Haynesworth's letter.  The lack of BEP records

concerning Haynesworth's 1998 complaint is evidence that it was never received by the EEO Office.  Also noteworthy is Haynesworth's failure to mention this complaint when given an opportunity during his deposition.  The existence of the letter alone does not put defendant's evidence in dispute.  *See Freedman*, 255 F.3d at 845.  Therefore, defendant has met its burden of showing that Haynesworth did not exhaust his administrative remedies in 1998.

Plaintiffs Guion, More, Hughes, Haynesworth, Watson, and Williams initiated EEO counseling in mid-March and April 2001 with claims of age discrimination in promotions.  These contacts occurred within 45 days of only one promotion decision, the selections under vacancy announcement, 2001-002-GCM, which occurred on March 7, 2001.  After informal counseling failed, these plaintiffs filed individual and class complaints in July 2001.[5]  In February 2002, the Guion plaintiffs filed suit in federal court, and the More plaintiffs amended their federal complaint to add claims based on the 2001-002-GCM promotions.  Because 180 days had elapsed since the filing of the individual and class complaints, without action by the BEP or EEOC, plaintiffs were allowed to file these claims in federal court.

---

[5]  While there is limited evidence that Haynesworth submitted a formal, individual complaint, *see supra* note 3, *supra*, it appears sufficient to at least put that question in material dispute at this stage.

*See* 29 C.F.R. § 1614.407(b).  Once they had done so, they are
deemed to have exhausted their administrative remedies with
regard to claims based on the 2001-002-GCM promotions.  *See*
*Wilson v. Pena*, 79 F.3d 154, 166 (D.C. Cir. 1996) ("once a
complainant files a complaint or appeal and cooperates with the
agency or EEOC for 180 days, he is not required to take any
further action to exhaust his administrative remedies").

   Other than these claims, however, plaintiffs have failed to
exhaust their administrative remedies.  Plaintiffs did not file
administrative complaints within 45 days of any other promotion
decisions.  Nor did any plaintiff ever file a complaint regarding
the AWOL charges or loss of pay or leave stemming from the
mediation session with Magistrate Judge Facciola.[6]  And none of
the plaintiffs have filed a complaint regarding a retaliatory
hostile work environment.  Therefore, the Court must grant
defendant's motion for summary judgment with regard to all of
plaintiffs' claims due to lack of exhaustion, except for (1)
More's age discrimination claim regarding the 1998-130-YDC
promotions, and (2) the age discrimination claims of Guion, More,
Hughes, Haynesworth, Watson, and Williams regarding the

---

   [6]  Plaintiffs argue that the BEP is estopped from making a
failure-to-exhaust argument for the retaliation claims because
Chief Lindsay indicated that the AWOL charges were dropped.  The
D.C. Circuit has strongly indicated that estoppel arguments
cannot be used against the exhaustion requirement, and in any
event, plaintiffs have not even met the traditional elements of
estoppel such as misrepresentation.  *See Rann*, 346 F.3d at 197.

30

2001-002-GCM promotions.[7]

## II. Age Discrimination Claims

Age discrimination claims are governed by the disparate treatment analysis developed in the Title VII context. *Koger v. Reno*, 98 F.3d 631, 633 (D.C. Cir. 1996). "To prevail, the plaintiff must first establish a prima facie case by showing that the plaintiff is a member of the protected class (here, persons 40 or older) who was qualified for and applied for a position, but was rejected in favor of a younger [employee]." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) and *Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 n.6 (1981)). "If the plaintiff establishes a prima facie case, the defendant must come forward with a legitimate, non-discriminatory reason for its actions." *Id.* "Finally, if the defendant meets its burden of production, the burden shifts back to the plaintiff to persuade the fact finder that the defendant's reason for its

---

[7] Had plaintiffs' retaliation and hostile work environment claims been exhausted, the Court would have concluded that the claims nonetheless fail because plaintiffs cannot establish prima facie cases for the claims. Because the AWOL charges were rescinded and plaintiffs have produced no evidence that their pay, benefits, or privileges were in any way affected, there is no adverse employment action for the retaliation claims. *See Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002); *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 31 (D.C. Cir. 1997). Nor can plaintiffs demonstrate that they were subject to sufficiently abusive workplace conditions necessary to support the hostile work environment claims. *See Hussain v. Nicholson*, 435 F.3d 359, 366-67 (D.C. Cir. 2006).

action is a mere pretext for discrimination and (thus) that the defendant acted with discriminatory intent." *Id.* (internal quotation marks and citations omitted).

### A. 1998-130-YDC Promotions

Plaintiff More can establish a prima facie case for age discrimination in the 1998-130-YDC promotions because: (1) he was above age 40 at the time of the promotion; (2) he applied for the promotion; (3) he met the minimum qualifications and even was on the "best qualified" list of applicants; and (4) he was denied the promotion in favor of three applicants who were substantially younger (ages 28, 34, and 35). Defendant has put forth a non-discriminatory reason for its decision, specifically that the three selected officers held the longest work experience at the BEP, along with substantial time in grade. Plaintiffs argue that this rationale is pretext by pointing to the 2001-002-GCM promotions, where the three officers promoted, all under the age of 40, did not have as much experience at the BEP or time in grade as plaintiffs Hughes and Williams, who were not selected. Plaintiffs also argue that their statistical evidence demonstrates that defendant's rational is pretext for a consistent policy of only promoting younger officers.[8]

---

[8] Even though plaintiffs' claims regarding other promotions are barred as unexhausted, the circumstances of those employer actions may still constitute relevant evidence for plaintiffs' properly exhausted claims. *See Morgan*, 536 U.S. at 112; *Bowie*,

Plaintiffs have successfully put the defendant's promotion explanation into question by pointing to the 2001-002-GCM promotions.  And although plaintiffs' statistical evidence may be of limited probity because it omits many relevant variables from its analysis, *see Koger*, 98 F.3d at 637, the Court is not to make credibility determinations or weigh the evidence at the summary judgment stage, *see Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).  Because plaintiff established a prima facie case of discrimination, created a jury issue as to the falsity of the defendant's explanation, and introduced additional evidence that defendant was motivated by age-based animus, defendant is not entitled to summary judgment on this claim.  *See id.* at 151.

## B. 2001-002-GCM Promotions

Plaintiffs Guion, More, Hughes, Haynesworth, Watson, and Williams can establish a prima facie case for age discrimination in the 2001-002-GCM promotions because: (1) they were above age 40 at the time of the promotion; (2) they applied for the promotion; (3) they met the minimum qualifications and Hughes and Williams were even on the "best qualified" list of applicants; and (4) they were denied the promotion in favor of three applicants who were substantially younger (ages 29, 33, and 36).

---

283 F. Supp. 2d at 35.

Defendant has put forth a non-discriminatory reason for its decision, specifically that the officers promoted all volunteered for overtime on a regular basis and volunteered for assignments including in the administrative office.  Plaintiffs can argue that this rationale is pretext by pointing to the inconsistent rationale offered for the 1998-130-YDC promotions.  In addition, plaintiffs again also rely on their statistical evidence to raise an inference of discrimination.  As plaintiffs have established a prima facie case for these claims, and put defendant's rationale into factual dispute, defendant is not entitled to summary judgment on these claims.  *See Reeves*, 530 U.S. at 531.[9] Therefore, the Court will deny defendant's motion for summary judgment with regard to plaintiffs' age discrimination claims that were properly exhausted.

## III. Spoliation Motion

Plaintiffs have filed a motion for sanctions, or in the alternative for an adverse inference, because defendant has not been able to produce two pieces of evidence: (1) the KSA records

---

[9]  In general, courts will grant summary judgment to government-defendants where "governmental promotion decisions" are at issue and "where it appears the Government was faced with a difficult decision between two qualified candidates, particularly when there is no other evidence that [discrimination] played a part in the decision." *Young v. Perry*, 457 F. Supp. 2d 13, 20 (D.D.C. 2006).  At this point, however, defendant has neither brought forth detailed information regarding the relative qualifications of the applicants, nor yet conclusively undercut plaintiffs' statistical evidence.

for promotions under vacancy announcements 1997-442-YDC and 1998-113-YDC; and (2) Commander Ashton's personal notes regarding her selections for promotions.  In general, the "destruction of notes or other documents purportedly relevant to a case of discrimination has no effect except when the circumstances of destruction provide a basis for attributing bad faith to the agency involved."  *McIntyre v. Peters*, 460 F. Supp. 2d 125, 136 (D.D.C. 2006) (internal quotation marks omitted).  Drawing upon District of Columbia law, courts have found that "bad faith" destruction or concealment of evidence encompasses both "deliberate" destruction or concealment, and destruction or concealment with "reckless disregard" for the relevance of the evidence.  *Rice v. United States*, 917 F. Supp. 17, 19 (D.D.C. 1996) (citing *Battocchi v. Washington Hosp. Ctr.*, 581 A.2d 759, 765-66 (D.C. 1990)).  In addition, a court may employ an adverse inference due to a party's "failure to preserve evidence," even if deliberate or reckless conduct is not present.  *Id.* at 19-20. In doing so, the court should consider the "degree of negligence or bad faith involved, the importance of the evidence involved, the importance of the evidence lost to the issues at hand, and the availability of other proof enabling the party deprived of the evidence to make the same point."  *Id.* at 20 (quoting *Battocchi*, 581 A.2d at 766-67).

### A. 1997 and 1998 KSA Records

With regard to the KSA records, both parties agree that the BEP has a standing policy to maintain promotion records for only two years.  *See* Answer to 3d Am. Compl. at 3; Pls.' Reply for Mot. for Sanctions at 5.  Defendant has stated that the BEP no longer retains these materials, implying that they were destroyed.  As an initial matter, two questions are unresolved.  First, neither party has stated exactly when the promotions in question occurred, i.e. when the two-year clock started running for the records.  Second, neither party has stated when the KSA records were destroyed.  Without that evidence, it is difficult to ascertain whether the BEP complied with its own policy.

Notwithstanding these uncertainties, plaintiffs argue that the BEP should have been on notice of the potential relevancy of these documents prior to their destruction.  Plaintiffs point first to the complaint filed by plaintiff More in 1998.  As discussed above, however, this complaint specifically referred to the 1998-130-YDC promotions.  Arguably, this complaint was insufficient to put the BEP on notice that More wanted to challenge the 1997-442-YDC and 1998-113-YDC promotions as well.  Plaintiffs also allege that the BEP should have been put on notice by the More plaintiffs' federal complaint, filed in December 1999.  It is unclear, however, when the BEP learned of this complaint.  Defendant's counsel did not enter an appearance

or otherwise act in this case until March 30, 2000.  It is possible that the records had already been destroyed at this point.  Because plaintiffs have not shown that the BEP was or should have been on notice of the relevancy of the documents before they were destroyed, it cannot be determined whether the BEP acted either recklessly or negligently.  Therefore, neither sanctions nor an adverse inference appear appropriate without additional information.  Accordingly this part of plaintiffs' motion for sanctions will be denied without prejudice subject to reconsideration if further evidence is provided.

### B. Commander Ashton's Notes

Plaintiffs' motion with regard to Commander Ashton's notes has less merit.  Plaintiffs have offered no evidence that Ashton was obligated to make her notes part of the official promotion records saved by the BEP.  Rather, Ashton stated that the notes were purely for her own personal use, and thus do not appear to be official records.  Moreover, although the notes cannot now be located, Ashton was at worst only negligent in not preserving the records, and likely not even so because Ashton left her BEP position before plaintiffs requested the notes.  Finally, plaintiffs have still been able to obtain evidence of Ashton's decision-making process because they have been able to depose her.  Therefore, an adverse inference due to failure to preserve evidence is uncalled for in this case.  *See Rice*, 917 F. Supp. at

37

20.  Accordingly this part of plaintiffs' motion for sanctions
will be denied with prejudice.

### CONCLUSION

Defendant's motion for summary judgment is **DENIED in part**,
with regard to (1) More's age discrimination claim for the
1998-130-YDC promotions, and (2) the age discrimination claims of
Guion, More, Hughes, Haynesworth, Watson, and Williams for the
2001-002-GCM promotions, because plaintiffs have produced
sufficient evidence at summary judgment to demonstrate that the
claims were administratively exhausted and to raise an inference
that the promotion decisions were discriminatory.  Defendant's
motion for summary judgment is **GRANTED in part**, with regard to
all other claims, because defendant has met its burden of
demonstrating that these claims were not administratively
exhausted.  In addition, plaintiffs' motion for sanctions is
**DENIED**, the denial being **without prejudice** with regard to the
missing KSA files, and **with prejudice** with regard to Commander
Ashton's notes.  An appropriate Order accompanies this Memorandum
Opinion.


Signed:     **Emmet G. Sullivan**
            **United States District Judge**
            **March 30, 2007**